IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOHN THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 110-090 |
| | ) | |
| DENNIS BROWN, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, who is currently incarcerated at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

I.  **BACKGROUND**

Plaintiff has named the following prison officials and employees at ASMP as Defendants in this action: (1) Warden Dennis Brown; (2) Deputy Warden Scott Wilkes; (3) Chief Counselor Bussey; (4) FNU Reese, a Unit Manager; (5) Sergeant Carr; (6) FNU

Sanders, a counselor; and (7) FNU Starnes, a counselor. (Doc. no. 1, pp. 1, 4.) According to Plaintiff, in April 2010, prison officials assigned a dangerous inmate to share Plaintiff's living quarters. (Id. at 6.) Plaintiff claims his cell mate was a gang member who had a history of violence. (Id.) Furthermore, Plaintiff alleges that soon after moving into Plaintiff's cell, his new cell mate made a habit of threatening to kill Plaintiff and himself with a large makeshift knife, which he showed to Plaintiff. (Id.) After enduring these threats for several days, Plaintiff states that he approached his detail officer, Officer Durden, to request a transfer to a different cell. (Id.)

Before receiving a response from Officer Durden, Plaintiff noticed food missing from his locker and confronted his cell mate, whom he suspected had taken the missing food. (Id.) Plaintiff alleges that his cell mate responded by threatening to "do something" to Plaintiff if he persisted with his accusations. (Id.) Plaintiff states that following the food theft incident, he explained his situation to Defendant Reese and requested a transfer. (Id.) Defendant Reese purportedly refused this request. (Id.) Plaintiff avers that he then repeated his concerns to Officer Durden, who called Defendant Bussey and asked her to transfer Plaintiff to a different cell. (Id.) Plaintiff alleges that Defendant Bussey also refused to transfer him. (Id.) Plaintiff states that he then approached Defendant Carr with his concerns, who refused his request for a transfer because he had already been moved once and had no proof of his cell mate's alleged actions. (Id.)

On May 13, 2010, Plaintiff alleges that he and another inmate, who was a member of the same ethnic group and gang as Plaintiff's cell mate, agreed to switch cells. (Id.) However, Plaintiff maintains that when they sought approval of their arrangement from

2

Defendant Reese, she again refused. (Id. at 7.) In the days following Defendant Reese's refusal, Plaintiff alleges that his cell mate continued his verbal threats, and that on May 15, 2010, his cell mate stole his gym shorts and two towels from his locker. (Id.) Plaintiff states that he then reported his cell mate's conduct to Officer Austin, and that the same day – May 15th – he was transferred out of his cell and into protective custody. (Id.) Plaintiff does not allege that he suffered any physical injury during his confinement with the violent cell mate. (Id.)

On May 16, 2010, Plaintiff began a campaign of filing grievances related to the theft of his property and the denial of his various requests for transfer. There is no need to recount all of the grievances filed and responses received by Plaintiff; it is sufficient to note that his initial grievances were denied because they were improperly submitted through the mail instead of given to a counselor, and that, despite Plaintiff's claims that the prison counselors would not accept his grievances, his later grievances were denied either as untimely or because he had filed more grievances than allowed under ASMP's grievance policy. (See id. at 5 & Ex. A-L.)

As relief for Defendants' alleged refusal to transfer Plaintiff and purported mishandling of his grievances, Plaintiff seeks an injunction, declaratory judgment, and "money damages for [his] anxiety, mental and emotional anguish." (Id. at 9.)

## II. DISCUSSION

### A. Plaintiff Not Entitled to Damages for Mental Suffering

One of the things Plaintiff seeks compensation for is the mental pain and suffering he endured as a result of Defendants' refusal to transfer him to another cell. However, under

3

42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has unequivocally held that this provision applies to constitutional claims. Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000) (*en banc*); cf. Napier v. Preslicka, 314 F.3d 528, 532-33 & n.2 (11th Cir. 2002), *reh'g en banc denied*, 331 F.3d 1189 (11th Cir. 2003) (finding that § 1997e(e) bars § 1983 claim for emotional injuries alleged to have resulted from mistaken arrest).

In this case, Plaintiff does not contend that he suffered any physical injury resulting from Defendants' refusal to transfer him or separate him from his violent cell mate. Consequently, Plaintiff has failed to allege facts sufficient to satisfy the mandates set forth in § 1997e(e). Therefore, Plaintiff fails to state a claim upon which relief may be granted as to his request for monetary damages for his pain and suffering.

### B. Improper Grievance Procedure Claim

Plaintiff's claim that his constitutional rights were violated by Defendants' mishandling of his grievances must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]]he Constitution creates no entitlement to grievance procedures or access to

4

any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff states that Defendants improperly refused to accept some of his grievances and improperly denied others. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims premised on Defendants' failure to properly process his

grievances fail as a matter of law.

### C. Claim for Injunctive Relief

While Plaintiff requests that the Court "issu[e] an injunction and Declaratory Judgment," he does not specify what type of injunctive relief he seeks. Nevertheless, it is apparent from Plaintiff's Complaint that he is not entitled to injunctive relief of any type. To the extent that he seeks injunctive relief for his claim that Defendants wrongfully ignored and denied his requests to transfer away from his dangerous cell mate, his claim is moot, as he states that he has already been transferred away from that cell mate and into protective custody. (Doc. no. 1, p. 7.) To the extent that Plaintiff seeks injunctive relief regarding his complaint about Defendants' improper handling of his grievances, his request must be denied because his allegations of mishandled grievances fail to state a claim upon which relief may be granted, as explained above. Therefore, Plaintiff is not entitled to injunctive relief in this case.

## III. CONCLUSION

As Plaintiff has failed to state a claim upon which relief may be granted against any Defendant, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 15th day of November, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE